Case number four is United States against Quiggle. Thank you, Your Honor. Mr. Roy. Thank you, Judge. Good morning, may it please the court, Folsom Council, Attorney Michael Roy on behalf of Daniel Quiggle. Twenty-seven and a half years is a long time to spend in prison, especially for a first-time offender, especially with someone with the same mitigating circumstances as in this case. And it's undisputed, I believe, that similarly situated defendants typically receive lower sentences, guidelines notwithstanding. It's undisputed that Quiggle presented evidence of similarly situated defendants to the district court. Our argument is not about how the judge weighed the factors. It's simply the judge's failure to address that argument and consider unwarranted disparities. I think this case is a pretty simple elevator pitch. This is a unique set of circumstances. Going back to Gall and Kimbrough, Gall talks about how the guidelines typically consider the need for unwarranted disparities because the Sentencing Commission considered the goal of avoiding disparities when creating the guidelines. 2G 2.2, the guideline at issue here, is unique because it was not created by the Sentencing Commission with the purpose of avoiding disparities. The Sentencing Commission was overwrote by Congress. It's pretty backwards, isn't it, to suggest that a sentence recommended by Congress should carry less weight than a sentence recommended by the Sentencing Commission? Well, Congress also said it has to consider unwarranted disparities. And Congress also sets a maximum and minimum statutory range in every case, but there's not a presumption that one end of that bracket is more reasonable than the other. And also, our argument, again, is not about substantive reasonableness. I mean, I understand in Dorvey, a different court found that within guidelines that in 2G 2.2 can be substantively unreasonable, but this court has already rejected that, so we're not arguing substantive reasonableness. We're just arguing the procedural issue of whether the court adequately considered the mitigating argument about disparities. And on that front, the traditional sentencing information platform is relatively new. It's, as this court was discussing in Oregon, and I'm not sure of the pronunciation, what kind of statistics would be possibly used to compelling data to show disparities notwithstanding the guidelines. It's hard to imagine what would be a better form of data or a better form of statistics than what the Sentencing Commission has put out. Just like 3553A6 itself, the JSON data, or Judicial Sentencing Information Platform data, it considers similar backgrounds, considers similar aggravating circumstances. It sort of cuts the balance between... You can always find individual facts that are going to be different between any two defendants. That's true in every single case, but Congress didn't say that A6 is only concerned with exactly identical defendants. It said similarly situated defendants. Wasn't Oregon about JSON data specifically, though? Not, Judge, I don't believe so. Have you checked the briefs on that? I might double-check those if I were you. I think Oregon held that the court need not look at that data for the disparity point as long as it considers the correctly calculated guidelines. If the briefs in Oregon talked about JSON data, it did not make it into the final opinion. The opinion talks about data, correct, doesn't name JSON, but I would check the briefs before you categorically tell us that it did not involve JSON. I could be mistaken on that in the briefs, but if it didn't make it into the opinion, my argument would be that what's actually in the opinion is what matters, and that another difference would be, of course, that this is an extremely unique guideline, 2G2.2, and that there is a national norm of most judges sentencing well below the guideline. I don't think there's a real dispute on that. And going back to Golan Kimbrough, Kimbrough does say that when there is a practice in other courts to sentence below the guidelines, courts should be considering that practice. Even if this doesn't fall within a failure to consider A6, there is still the issue of having to consider principal arguments mitigation. I understand the government's position that he didn't raise it at the hearing, but it is one of the main arguments in the sentencing brief. I mean, today I didn't come prepared to repeat all the arguments that I made in writing at oral argument. I came prepared to answer questions, but I expect, of course, that the panel read and carefully considered the written briefs. And I think it's fair for a trial attorney to have the same assumption about a district judge. If there's a categorical rule that only arguments raised at the hearing are principal arguments, that's going to create a sort of weird arms race for preservation. You're going to end up with almost like cargo cult law advocacy where you're just throwing out every objection at the sentencing hearing orally in the hopes of not waiving something. I would be happy to answer any further questions the panel has. Otherwise, I would reserve for rebuttal and respond to whatever the government argues. Certainly, counsel. Ms. Helwig. May it please the court, Hannah Helwig on behalf of the United States. The district court did not procedurally err when it gave a below guidelines sentence. At the sentencing hearing, the district court explicitly addressed the defendant's principal mitigation arguments and considered the section 3553A factors just as it was required to do. As this court has held repeatedly, when a district judge correctly calculates a guidelines sentence, explicitly considers that guidelines range and then sentence a defendant below or within that guidelines range, that necessarily considers the need to avoid unwanted sentencing disparities as required by section 3553A6. That is because the sentencing guidelines under this court's precedent are themselves an anti-disparity formula. They are designed to treat similarly situated defendants similarly. Here, the district court did exactly that. She correctly calculated the guidelines range, carefully considered that range, and then sentenced the defendant below the guidelines range. Therefore, according to this court's precedent, the district court was not required to explicitly discuss section 3553A6. The defendant argues that the child pornography cases are somehow different, but nothing suggests that this court's precedent does not apply to child pornography cases. To the contrary, this court has explicitly relied on this precedent in a child pornography case recently. The guidelines must be a sentencing judge's starting point as this court has repeatedly held. Here, the district court carefully considered that guidelines range and sentenced the defendant below that guidelines range. She thus was not required to explicitly discuss section 3553A6. And with respect to the defendant's disparity argument specifically, as the defendant already raised, the defendant did not raise that argument at all at the sentencing hearing. This court has also repeatedly held that a district judge does not need to explicitly discuss every single one of a defendant's mitigation arguments. Instead, district court's only required to address the defendant's principal mitigation arguments. Here, the defendant made four arguments in his sentencing brief. The two that he just devoted the most time and substance to were the only two that he then raised at the sentencing hearing. This disparity argument and the data that the defendant now relies on was not mentioned once at the sentencing hearing. A district court should not be faulted for not choosing to focus on an argument that the defendant himself did not focus on, particularly considering this court's precedent that when a district court correctly calculates a guideline's range and considers a guideline sentence and then imposes a sentence either below or within that range, she necessarily considers the need to avoid unwarranted disparities between defendants. If the court has no further questions. I have one question.  Condition 13, which you've agreed to be remanded for, why is that condition still being proposed by probation in PSRs in your district? Can your office not convey that message? Understood, Your Honor. This is not in the record, but based on my experience, I can say that that condition is no longer being proposed by probation. Thank you. If the court has no further questions, the government would ask this court to issue a limited remand to address for the district court to either modify or clarify supervised release condition 13, but otherwise affirm the defendant's sentence. Thank you. No further, Mr. Broad. I want to reiterate again, we're not arguing that judges need to do a checklist fashion announcement of what they think on every single individual factor. We're not arguing substantive reasonableness or that a sentence within the guidelines is not appropriate in some cases. And if this was a different case where there was more clearly aggravating factors from the record, I would spot the government that it would be assumed that the court considered that with the disparity. In the sentencing transcripts, sort of connecting the dots and stepping into the shoes of Judge Coleman, you know, there was discussion of a passive user versus someone who reached out to a minor, right? And the Jason data doesn't necessarily account for that difference, which putting myself in the shoes of Judge Coleman, although she didn't say explicitly, this is why I'm not going to go down more. I mean, she did go down quite a bit, but she distinguished your client from sort of the, I think she called it passive user. I don't have the exact language, but why isn't that? So I have a couple of responses to that, Judge. First, I would say the Jason data does actually consider that because for a couple of reasons. One is the guideline range that was driving the bus here was not the enticement, right? It was the possession count. And he received a separate enhancement for the possession guidelines specifically for the enticement. It was a five point enhancement that he received for the communications. So that sort of active, however you want to, you know, passive versus active possession, that was baked into the guidelines already. It means it was also baked into the Jason data. Essentially every aggravating factor in this case was baked into the guidelines. But everyone's 55 is going to be different, right? We don't know in terms of looking at similarly situated defendants. Some of those might include folks who had enticement charges and some may not. And the judge seemed to make a distinction between those two sets of defendants. Well, I mean, if that was the judge's intention, the enticement itself, the guideline recommendation for that is about like half of what the guideline recommendation was for the possession. So Congress and the sentencing commission both already seem to think that that is less aggravating. And in terms of comparing, you know, whether they got the B-5 for enticement or what, looking at the mine run of enticement cases, he would not be on the aggravating end. He solicited a picture of breasts from a high school student. That's not like other cases this court has seen where they're in a sting operation involving prepubescent kids, or I think it was Price where it was the father who took illicit photos of his teenage daughter like throughout her entire teenage years. This is like one of the more minor enticement cases, which is why I think the government made sure to keep as stipulated offenses the other charges because those are the ones that actually resulted in the bigger sentence. I just don't read from the record that he was really being punished for the enticement. He was being punished for the possession. And on that front, he is on the more mitigating side. I mean, the government really can't identify anything about the possession that's more aggravating than the mine run case. All they cite is the sheer size of the library, but he's actually about a quarter of what's the median size, according to sentencing commission statistics. I'm not trying to argue to reweigh the factors on appeal. That's obviously not appropriate. But if it was all very clearly aggravating, I would be happy to assume that the judge had considered all that. And of course, there wouldn't be a disparity issue. And I think that's why, even if the court sided with us, this is so fact-specific in this case because we're involving a unique guideline where the sentencing commission has actively disagreed with Congress. We have unique statistics. This isn't going to work for many guidelines. It's really only special circumstances like child pornography, crack, cocaine versus powder, especially before they amended the disparity. And even then, if Judge Coleman had said more about why she did not find it compelling, that would be the end of the case. We recognize that substantive unreasonableness, this court has, I don't believe, ever found a below-guideline sentence to be substantively unreasonable. But it has said in Johnson that even below-guidelines courts are required to consider mitigating arguments. And that's really all we're saying here. It's a procedural issue about the failure to consider the mitigation. The court doesn't have any other questions. Thank you.